We'll go to our last oral argument of the day, 22-7016, U.S. v. Hunsaker. Mr. Lee, you may proceed. Good morning, your honors. I'm Josh Lee from the Federal Public Defender's Office, and I represent the appellate Mr. Hunsaker. Mr. Hunsaker seeks a resentencing on the ground that the district court clearly erred in sentencing him as a manager or supervisor. It was erroneous for the court to impose that enhancement because the government never pointed to a single instance of Mr. Hunsaker ever telling anyone else what to do, and the government never identified a single person who was Mr. Hunsaker's subordinate. That precludes applying the enhancement because this court's case law says there has to be proof that the defendant exercised control over a subordinate. In my reply brief, I cited at least six published cases from this court that says control is required. I think the clearest one, ironically, is the one that the government says supports its case, and that's the Roberts case. In the Roberts case, this court overturned a manager or supervisor finding precisely because there wasn't, quote, evidence of decision-making authority or control over a subordinate, which Roberts held was, quote, to conclude that the defendant is a manager or supervisor. So the government's argument doesn't work. The district court cited three facts in support of its manager-supervisor finding, but those don't support the enhancement either. First, there was a cooperating witnesses statement that Mr. Hunsaker was the leader's right-hand man or number two or second-in-command. That doesn't support the district court's ruling for two reasons. Number one, the label itself is not proof of anything, and that is the D.C. Circuit's decision in Graham. It's also supported by an application note to the sentencing guideline, application note four, that says when we are determining what role the defendant played, titles like boss or kingpin are not controlling. What about the Eighth Circuit's opinion that a co-conspirator's characterization of an individual as the right-hand man would support an enhancement under 3B1.1? I'm not aware of that decision. I don't remember whether it was cited in the briefs, but I would say that that decision, if it's only based on the label, is both wrong and distinguishable. So let me say why it's distinguishable first. It's distinguishable because in this case, we know what the label was based on, and it was based on facts that are insufficient. So the co-conspirator said, I think that he's the right-hand man because he went everywhere with the leader and was heavily involved in the conspiracy. Well, under Roberts, those facts are insufficient. So the co-conspirator slapping a conclusory label on underlying observations that are not sufficient doesn't work. Now let me tell you also why the decision as you described it is wrong on its own I thought at 4.30 a.m. this morning of an analogy that I think helps demonstrate that. So let's say that the government was trying to get an obstruction of justice enhancement, and what they did is they called a police officer to the stand, and the police officer said, well, the defendant hindered our investigation and said nothing else. Clearly, that would not be enough. The district court needs to know what it is that the defendant did. But in this case, again, it's even worse than that because we know what the label was based on, and those facts are insufficient. So with the obstruction of justice enhancement, it would be as if the police officer testified, he hindered our investigation. He asked for a lawyer and refused to answer any questions. Well, not only is the label itself not good enough, the underlying facts on which the label is based are not good enough. So next, the district court said another reason that he's a manager or supervisor is because he was responsible for picking up large amounts of drugs. So that doesn't show that he's a manager or supervisor, and it's clearly erroneous in any of it. So it doesn't show that he was a manager or supervisor because handling and transporting large amounts of drugs doesn't imply that you're telling other people what to do and doesn't apply that anybody else is your subordinate. Handling and transporting large amounts of drugs is what legal students do, and we typically think of them as minor participants. But in any event... Let me play devil's advocate, Mr. Lee. If there's a conspiracy involving 150 pounds of methamphetamine, the quantity involved in the conspiracy suggests that there has to be more than one person in charge of making decisions. It's not like it's just a very small conspiracy involving a large amount of methamphetamine. I think that it would be speculating to say that anybody else, that it's Mr. Hunsaker, is the problem. And the other thing is that Mr. Hunsaker was not responsible for the drugs. The PSR is really clear that Anita Cooper was responsible for the drugs and resupplying the conspiracy, and that Mr. Hunsaker was one of, like, five people who took turns going with her on the trip. So another, in further response to your question, Judge Baccarat, I think it's pretty significant to me that we know a ton about Mr. Hunsaker's participation in the case, because the government had cooperating witnesses, the government had his Facebook messages, the government had tapped phone calls, and with all this information that the government had, they couldn't point to one instance of him ever giving directions or instructions to anybody, and hasn't even alleged that any particular person was his subordinate. The last thing I want to say, the third fact the district court identified was that Mr. Hunsaker attempted to find a new source of supply. That doesn't support its ruling for two reasons. The first is that attempting to play an aggravating role is not sufficient. Mr. Hunsaker never actually obtained any drugs for the conspiracy, and the guideline applies to a defendant who was a manager or supervisor, not to one who tried to be. But regardless, even if he had successfully obtained a supply of drugs, obtaining materials for the conspiracy is not sufficient. The defendant must supervise another participant, and buying drugs from a wholesaler doesn't make you the wholesaler's supervisor, it just makes you his customer. So for those reasons, I'd ask that you hold the district court clearly aired in opposing the manager's supervisor. I'd like to ask you a question about Roberts. I was checking the language in Roberts. I thought the sentence on which the government relies is the following. It said, so I became federal reporter third at 523, and I'm sure you're familiar with the sentence. We have understood the term supervisor to apply to a defendant who exercised some degree of control over others involved in the commission of the offense, that's your position, or must have been responsible for organizing others for the purpose of carrying out the crime. Right. So it seems to say, in the first part, exercise some degree of control, or something else, which obviously has to be something where you don't exercise some control. So how do you deal with that language? Two responses to that. The first is, Mr. Hunsaker didn't organize anything, so it's irrelevant. But the second thing is, if you keep reading in Roberts, the next thing they say is, they talk about the two alternatives that you mentioned, and they say, exercise control or organizational authority over a subordinate. Then you go down to the holding, and the holding is, we reverse, because there was no evidence of decision-making authority or control over a subordinate. Further, you don't have to take my word for it that that's what Roberts held. In my reply brief, I cited three other cases that say, Roberts held control is necessary. But then again, I think that's how you handle it. But if Roberts didn't, if they're wrong about Roberts, the earlier opinion controls in this circuit. There's not en banc review of Roberts. So Roberts controls over a later contrary. I think if the later cases are saying what the holding in Roberts was. That's always a difficult one. Yeah, but that being said, if you look at what Roberts held, they held, we reverse because the evidence didn't show decision-making authority or control. But again, it's sort of immaterial because he didn't organize anything. If you look at what the court says, they say, this court has said in McDonald and in earlier cases, organizing is when you devise a criminal scheme, where you provide the wherewithal for the crime, or where you coordinate and oversee the implementation of the scheme. He didn't do any of that. He didn't come up with the plan. He didn't provide any materials. And he didn't oversee anything. At least there's evidence of it. So for those reasons, I'd ask that you reverse. Good morning again, Your Honors. Lisa Williams here on behalf of the United States of America. One syllable, two letters, a very small but a very mighty word, and that word is or. And that or is what is significant in not only the Roberts decision, but the decision cited in the reply brief by the defendant, because it is or, or, or. And there is nothing in this precedent, in the circuit's precedent, that requires hierarchical control in order to impose the manager-supervisor designation. I want to talk about three specific cases. So Roberts. Well, one thing, it's one thing to talk about language. It's another to find a holding. Do you have a holding where someone was, where we upheld an enhancement as a supervisor or manager where there was no control? Yes. Well, not language. I think that the Czar case that the defense cited in their reply brief is a great example. So Czar is the mortgage fraud case where he recruited others to participate in the conspiracy. He advised them what houses to buy and what houses to sell. He directed, he advised, that's, that's, he advised them. So he didn't control them. He advised them of what houses they could buy and sell. He directed them to utilize grant programs. Oh, you could use this grant program. He introduced them to the real estate agent and he provided them hard money loans. Those are the things that the Czar, the defendant in Czar did. And this court upheld the manager-supervisor designation. How does the evidence here fit that? So it's the same type of organizational control directing the operations of the conspiracy. And I think what the court was questioning hits the nail on the head. You don't move 150 kilograms of meth without a highly organized structure in place of coordinating deliveries, of traveling, of recruiting people to become sources. The act of recruitment, much like Czar recruited people to participate in the scheme, is an act of organizing, of organizing the criminal activity. So maybe there needed to be somebody. Arguably, he says it's speculative. Maybe it's not. But how do we know it's Mr. Hunza? Well, one of the reasons we know is because Everett Hood says he's second in command. But what about what Mr. Leese explains for Mr. Hood's characterization of that? That he accompanied her along with four other individuals? Well, there's nothing to suggest that he, that that would fit recruiting, you know, these other attributes that were applicable in Czar. So, well, there's the Facebook electronic surveillance information with the messages directly between him and Cooper, where they're talking about recruiting just the two of them, people into the conspiracy, as well as retaliating against others who had stolen from them. There is the post-Miranda interview that the defendant gave. He's able to identify high-level sources in the conspiracy and the ability to understand the command and control structure of the drug conspiracy, not just at your level, but not even at the level, you know, Cooper's primary source was Blanche Dyer, and he identified Dyer, but then Dyer was obtaining his methamphetamine from Eric Castillo, which defendant also was able to identify. So he has an intimate knowledge of the functioning of the conspiracy. And also when they're looking for Cooper, they call defendant, and that shows some degree of organization like, hey, we need to check in with her. Where is she? We know that you're in charge. We know that you understand what's on in the conspiracy. You're our guy with the info. That all demonstrates that he has that organizational control. And that's what I want to get back to. So Roberts establishes that it's some degree of control over others or responsible for organizing others. If you look at Beltran, also relied on by the defense, the defendant must exercise some degree of decision-making authority or control over a subordinate. And then Gonzales-Edea, also cited by the defense, says at bottom, a supervisor is one who exercises some degree of control over others or who was responsible for organizing others for the purpose of carrying out the crime. So you have to organize, but not necessarily have hierarchical control. And I too thought of an analogy, although it wasn't at 4.30 this morning. Here's my analogy. Elementary school bake sale, parent-teacher organization. I'm the mom in charge, and I am responsible for managing the bake sale. I set up the sign-up sheet. I say that we're going to have cookies and brownies and cupcakes. I find the table. I set the prices. I have a sign-up sheet for shifts, but I don't tell Karen, you have to bake chocolate chip cookies. And I don't tell Ashley that she has to bring cupcakes. But I am organizing those people for this bake sale success without exerting hierarchical control. And that's what I think that this circuit, when you read Roberts and Beltran and Gonzales-Edea, understands, that there is a way to organize in a drug conspiracy and in other conspiracies. There is a way to organize without specifically telling people, you must go deliver these drugs today at noon, and you have to pick up this money and go there. In large part, because as you move up the ladder in these high-level drug trafficking organizations, you have more broad control and decision-making authority. And you're not involved in the nitty-gritty day-to-day details of arranging specific pickups or drop-offs. But that doesn't mean that you're not a manager or supervisor. You hold a very important high-level role in the drug trafficking organization, one of a manager or supervisor, and you should be held accountable. The guidelines specifically provide for organizer. That's one of the alternatives. You've got supervisor, manager. If an organizer is always a manager or supervisor, that would be contrary to the presumption we have that these words mean different things. That's not a strong presumption, but it should inform our interpretation of the other words. Well, I think, Your Honor, that's where you go back to comment four of 3B1.1, to distinguish between organizer, leader, manager, supervisor. An organizer and a manager or supervisor can do similar things and organize, but is it, do they get bumped up to the organizer, or should they those factors in comment four? And it depends on a lot of things, one of which is the nature and scope of the conspiracy. And I think that it was an excellent point that 150 kilograms is a significant amount of drugs. It's probably harder to have a manager or supervisor if you've moved, you know, two ounces. Are you really managing or supervising a conspiracy if you've only moved two ounces? At the same time, what if this conspiracy involved a thousand kilograms of methamphetamine? Then maybe the day-to-day work of organizing the group for the purpose of criminal activity is so significant that you're not a manager supervisor, that you move up to the organizational leader section. I also think it's interesting that for leader-organizer, this circuit has drawn a distinction of hierarchical control, and you have to control to be a leader. You don't have to control to be an organizer. Manager-supervisor is supposed to kind of reflect that leader-organizer, but at a lesser degree. And so why would the circuit require hierarchical control for both of those? Certainly if you're supervising, much like if you're leading, leadership implies hierarchical control and directing people. Supervising also suggests that, but managing does not. Much like organizing, managing suggests the factors that you're responsible for organizing if you're a manager and that you have some degree of decision-making authority. Managers do have some degree of decision-making authority, but they don't have to necessarily have hierarchical control. And so while there's certainly no case law to support this, it just seems that manager-supervisor is intended to mirror leader-organizer, but at a lower, a lesser level. And so it makes sense that if it's going to mirror, it's going to adopt that distinction, that hierarchical control is required to be a leader, but not an organizer, and hierarchical control is required to be a supervisor, but not a manager. I think that the court is pretty comfortable with the government's arguments about why this defendant did organize others for the purpose of carrying out the crime, and so I won't touch on that, but I would just reiterate, oh, there was one other case I wanted to mention, very quickly. The defense makes a lot of issue that second-in-command isn't the best way to that significant. And of course, there's a circuit case that Your Honor pointed out, I think you're referring to the Brown case that was cited in the government's brief, but there is a Tenth Circuit case, Pellier, where most of the evidence, and that's P-E-L-L-I-E-R-E, and that's cited in the defendant's reply brief. The District Court, or excuse me, the Court of Appeals ultimately remands that to the District Court because there weren't sufficient factual findings. It didn't necessarily dispute that the evidence wasn't enough to apply the role, it just said that the District Court needed to articulate the basis. I think at one point it said certainly if the District Court found these facts persuasive, it would uphold the enhancement, but the majority of the information in that was that that defendant was second-in-command. I mean, that is a case where most of the evidence about him being a manager or supervisor was, in fact, that others in the conspiracy viewed him as second-in-command. And so while the Eighth Circuit has explicitly said that, I think that the Tenth Circuit has implicitly recognized that being known as second-in-command by others in your organization is a factor that speaks to your management of the drug trafficking organization. So with that, Your Honors, if there are no more questions from the bench, the government would rest on the remainder of its briefing. You may have other things to say, but talk about Czar a little bit. I'm glad, yes. A couple of things to say about Czar. First of all, the test that Czar articulates is, quote, this court has sufficiently interpreted the manager-supervisor role as one requiring the defendant to exercise some degree of decision-making authority, control, or organizational authority over a participant in the offense. So that's the test. There's no evidence of that. Now, the facts of Czar. This court found, or the district court found, that Czar, or the defendant in Czar, recruited other participants, told them which homes to buy. This was a mortgage fraud case. He told the recruits which homes to buy and sell and told them which grant programs to use. So he was exercising authority. He was giving some degree of direction. Is this going to turn on whether he told them or whether he suggested or advised them? So to a certain extent, all this is academic because there's no evidence of any of it. So it could be enough under a Czar if he suggested that they do these things, but there's no evidence that Mr. Hunsaker did that. So the government gives, and again, why all of this is academic, the government gives the bake sale analogy where the bake sale person says, here's the baked goods we're going to sell. Here's what the prices are going to be. But there's no evidence of that in this case. He didn't decide what drugs they were going to sell. He didn't set the prices. He didn't send out flyers recruiting people. He didn't do any of that. The other thing I'll say is that I think I heard the government acknowledge that at least decision-making authority is required. If you don't have to have control, you still have to make decisions on other people's behalf. But there's no evidence that Mr. Hunsaker had any There's a lot of talk of organizing here. I think it's important to remember that the district court explicitly found that Mr. Hunsaker was not an organizer, and the government has not argued, much less shown that that factual finding is clearly erroneous. And then finally, I want to talk about, I think it's pronounced Pellier that the government mentioned. In Pellier, this court reversed for insufficient findings. It did not make any ruling on the sufficiency of the evidence. And so for all of those reasons, I'd ask that you reverse.